**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **PAMELA A. GHASTER, ET AL.,** | ) | **CASE NO.1:11CV1422** |
| | ) | |
| Plaintiff, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **CITY OF ROCKY RIVER, ET AL.,** | ) | **OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

**I. ISSUE**

This matter comes before the Court upon the Motions for Summary Judgment by Plaintiffs (ECF # 28) and Defendants (ECF#27). For the following reasons, the Court DENIES Plaintiffs' Motion for Summary Judgment and GRANTS Defendants' Motion for Summary Judgment.

**II. BACKGROUND**

Plaintiffs, Pam and Earl Ghaster, are residents of the City of Rocky River. Mrs. Ghaster has a turbulent history with Rocky River and Mrs. Ghaster's neighbors, particularly Laurie Rauser. On December 13, 2007, Mrs. Ghaster was found guilty of Witness Intimidation and

1

Obstruction of Official Business. Rocky River Municipal Court Case No. 07CRB1992. Mrs. Ghaster served a 90 day jail sentence and was released in early April 2008. On October 2, 2007, Rocky River Municipal Court Judge Donna Fitzsimmons issued a criminal temporary protective order (hereinafter "TPO") against Mrs. Ghaster in a case where Mrs. Ghaster was charged with Menacing by Stalking Ms. Rauser. Rocky River Municipal Court Case No. 07CRB2173. The TPO ordered Mrs. Ghaster "not to be present within 500 yards" of Ms. Rauser, including "encounters on public and private roads, highways, and thoroughfares." ECF DKT #27-3. On April 4, 2008, Ms. Rauser also sought a civil protective order in Cuyahoga County Court of Common Pleas, which was ultimately granted. Cuyahoga County Court of Common Pleas, Case No. 08CV655883. On April 18, 2008, Mrs. Ghaster was found guilty of Menacing by Stalking. *Id.*

The present action stems from events that occurred before a guilty verdict in Mrs. Ghaster's stalking case, while the criminal TPO was in place. On Saturday, April 12, 2008, Ms. Rauser reported to Rocky River Police that Mrs. Ghaster followed her on two different occasions, in two different cities, in violation of the TPO. ECF DKT #27-4. Ms. Rauser reported that Mrs. Ghaster pulled up next to her car, rolled down her window, and began laughing. *Id.* In response to Ms. Rauser's incident report, Rocky River Police charged Mrs. Ghaster with violating the criminal TPO and arrested her the same day at Robert Davis's house. Mr. Davis was Mrs. Ghaster's ex-husband. The case was docketed as Rocky River Municipal Court Case Nos. 08CRB724 and 725.

According to Mr. Ghaster, about one hour after Mrs. Ghaster was arrested, two Rocky River Police Officers arrived at Mr. Davis's home and asked Mr. Ghaster for his wife's cell

2

phone, which was still at Mr. Davis's house.[1]  ECF DKT #28-1, at ¶ 5-6.  Mr. Ghaster asserts that the Officers told him that Mrs. Ghaster was allowed to use her phone while in jail.  *Id.* at ¶ 6.  Mr. Ghaster then handed the phone over to the Officers.  *Id.*  Upon discovering that the Officers lied to him, Mr. Ghaster contacted his attorney, who faxed a letter to Rocky River Mayor Pamela Bobst and Police Chief Donald Wagner warning of constitutional violations.  *Id.* at ¶ 10.  On Tuesday, April 15, 2008, Detective Carl Gulas swore to an affidavit for a search warrant of Mrs. Ghaster's phone.  ECF DKT #28-3.  In the affidavit and later testimony, Det. Gulas stated that he believed Mrs. Ghaster's cell phone might have been used to track Ms. Rauser.  *See* ECF DKT #28-3 and 28-4.  Judge Brian Hagan signed the warrant, and the phone was subsequently searched; however, no relevant information was found.  For the acts on April 12, 2008, Mrs. Ghaster was found guilty of a probation violation in the Witness Intimidation and Obstruction of Official Business Case, No. 07CRB1992, but was acquitted of a TPO violation, Case Nos. O8CRB724 and 725.

      Plaintiffs filed this case as a result of the allegedly unlawful search and seizure of Mrs. Ghaster's cell phone, which she swears "caused [her] great inconvenience and expense."  ECF DKT #28-6, at ¶ 7.  Mrs. Ghaster asserts that she had private information stored in the phone including her, her husband's, and her son's social security numbers; financial and banking information; medical information; photos; addresses; proprietary business information; etc.  Mrs. Ghaster further asserts that the taking of her phone and searching it compromised all of her private information such that she was forced to buy a new cell phone and reload all of the data;

---

[1]     Mr. Ghaster states that he went to Mr. Davis's home when he heard that his wife was arrested.  ECF DKT #28-1, at ¶ 4.

3

and that her identity was stolen and she and others now receive anonymous "hang-up" calls. *Id.* at ¶ 8.

On July 12, 2011, Plaintiffs re-filed this case alleging four causes of action. Defendants filed a Motion to Dismiss, which the Court granted as to two of the claims. The only remaining claims for summary judgment are: 1) Plaintiffs' claim against Det. Gulas and John Doe Police Officers alleging unreasonable search and seizure of Mrs. Ghaster's cell phone while in police custody; and 2) a *Monell* claim against Rocky River for an alleged policy of violating Plaintiffs' constitutional right to be free from unlawful searches and seizures. Plaintiffs and Defendants now submit Cross Motions for Summary Judgment. *See* ECF DKT #27 and 28.

### III. STANDARD OF REVIEW

**Civil Rule 56 Standard**

A summary judgment should be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F. 3d 1339, 1347 (6th Cir. 1994); and the court must view the facts and all inferences in the light most favorable to the non moving party. *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 547, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest upon its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex* 477 U.S. at 324; *Lansing Dairy* 39 F. 3d at 1347. The Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass'n.*, 78 F. 3d 1079, 1087 (6th

4

Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F. 2d 404-06 (6th Cir. 1992).

The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment.  *Celotex* 477 U.S. at 323.  Finally, in *Mitchell v. Toledo Hosp.*, 964 F. 2d 577, 581 (6th Cir.1992)**,** the Sixth Circuit held that "the 'mere possibility' of a factual dispute is not enough.  Rather, in order to defeat summary judgment a plaintiff must come forward with more persuasive evidence to support [his or her] claim than would otherwise be necessary."

## IV. ANALYSIS

### A. Claim I: Unreasonable Search and Seizure Under § 1983

42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To prove a claim under Section 1983, a plaintiff must demonstrate "that he was deprived of a right secured by the Constitution or laws of the United States, and that he was subjected to or caused to be subjected to this deprivation by a person acting under color of state law." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994).  Here, Plaintiffs assert that they were deprived of their constitutional right to be free from an unreasonable search and seizure under the Fourth Amendment.

1. The Search

Regarding the search of the cell phone, Plaintiffs contend that they should be granted summary judgment because they believe the evidence shows that Det. Gulas knew his affidavit was false; admitted that his affidavit was based on speculation; that the affidavit stated the cell phone was obtained "voluntarily"; and that the affidavit was based on a police report which he was not involved in writing; therefore, the search was unlawful.  ECF DKT #28, at 13-14.  Defendants assert that the evidence fails to show Det. Gulas knowingly made false statements in his affidavit, and that absent any false statements, the affidavit was still sufficient to establish probable cause; therefore, they should be granted summary judgment.

A plaintiff alleging a wrongful search in violation of the Fourth Amendment must demonstrate that defendants failed to observe the applicable requirements for probable cause and a warrant, and that the plaintiff had a legitimate expectation of privacy in the place or thing searched.  *See United States v. Barry*, 673 F.2d 912, 916-17 (6th Cir. 1982).  Where there is a search warrant issued by a neutral and detached Magistrate, indicating that there is probable cause for the search, officers who rely on that warrant and its finding of probable cause are generally insulated from liability pursuant to § 1983 for Fourth Amendment violations.  *See Hale v. Kart*, 396 F.3d 721, 725 (6th Cir. 2005).  However, "an officer cannot rely on the judicial determination of probable cause if that officer knowingly makes false statements and omissions" necessary to the finding of probable cause.  *See Yancey v. Carroll County, Ky.*, 876 F.2d 1238, 1243 (6th Cir. 1989).  An officer who obtains a search warrant by making materially false statements in the affidavit on which the warrant is based may be liable to a plaintiff injured by the warrant if plaintiff demonstrates that: (1) the officer made the false statements knowingly and intentionally or with a reckless disregard for the truth; and (2) setting aside the false statements,

the remainder of the affidavit is insufficient to establish probable cause. *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989) (citing *Franks v. Delaware*, 438 U.S. 154 (1978)).

> "Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (en banc) (internal quotation omitted). Under this "flexible, common-sense standard," *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535 (1983), the establishment of probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n. 13 (1983). However, the "mere possibility" that a crime could be occurring within a home is not sufficient to justify a warrantless search; the police must have an "objectively reasonable basis for their belief" that a crime is being committed. *United States v. Ukomadu*, 236 F.3d 333, 337 (6th Cir. 2001). Likewise, mere speculation that a crime could be occurring is insufficient to establish probable cause. *See McCurdy v. Montgomery County, Ohio*, 240 F.3d 512, 519 (6th Cir. 2001).

*United States v. McClain*, 444 F.3d 556, 563 (6th Cir. 2005).

A thorough review of Det. Gulas's affidavit reveals that Det. Gulas properly met his burden for establishing probable cause. Therefore, the warrant and subsequent search of the phone were proper. Plaintiffs argue that Det. Gulas merely relied on speculation, citing to testimony Det. Gulas gave in Rocky River Municipal Court; however, this argument is without merit. Ms. Rauser filed a complaint that Mrs. Ghaster contacted her on two separate occasions, in two separate municipalities, in one day. Given the prior history between Mrs. Ghaster and Ms. Rauser, and the protection order already in place, there was more than mere speculation that a violation occurred. Based on this evidence, Det. Gulas then set forth adequate reasoning why Mrs. Ghaster's cell phone may contain evidence of, and might have been used in committing, the alleged violation (stating it was unlikely that this was a mere coincidence and one way of tracking someone is with a cell phone). ECF DKT #28-3, at 2. Of course, there will always be speculation as to whether a

7

search will actually turn up any evidence until the search is conducted. If the police already have actual knowledge, there would be no need for a search. Thus, Plaintiffs' reliance on the fact that the search of the cell phone recovered no evidence does not mean that the search warrant was improper or based entirely on speculation. Furthermore, there is no evidence on the record to suggest that Det. Gulas knowingly made any false statements;[2] and even when taking the facts in the light most favorable to Plaintiffs by removing the allegedly false statements from the affidavit, there is still ample probable cause to support the search warrant.

Plaintiffs further allege that Det. Gulas lied by swearing in his affidavit that the cell phone was obtained voluntarily and therefore, the search was invalid based on the "fruit of the poisonous tree" doctrine. For the reasons discussed in footnote 2, there is no evidence that Det. Gulas lied. Regarding the validity of the seizure of the cell phone, those arguments are addressed below.

2. The Seizure

Plaintiffs also argue that the seizure of the cell phone by John Doe Defendants was unlawful because the John Doe Police Officers lied to Mr. Ghaster so that he would hand over the cell phone. Defendants argue that the seizure was merely *de minimis* and, therefore, not a Fourth Amendment violation.

---

[2] Plaintiffs use strong language in their Motion, explicitly claiming that Gulas "lied" and "knew his affidavit was false." ECF DKT #28, at 13 and 14. Plaintiffs, however, point to no evidence to support this accusation. Rather, they make an illogical leap from Gulas' testimony that he relied on the police report in preparing his affidavit. There is no evidence that Gulas ever knew the subject matter of the police reports to be false or that the police reports were in fact false, and therefore, no evidence that he knowingly made false statements.

Whether a search or seizure of property upon consent is valid depends on whether the consent was voluntary.  A court determines the degree to which consent is voluntary "under the 'totality of the circumstances, with the government bearing the burden of proof'" where "[t]he 'government must show that there was no duress or coercion, express or implied, that the consent was unequivocal and specific, and that it was freely and intelligently given.'"  *United States v. McCurdy*, 40 F.3d 1111, 1119 (10th Cir. 1994) (citations omitted); *see also United States v. Basher*, 629 F.3d 1161, 1167-68 (9th Cir. 2011); *Simmons v. Bomar*, 349 F.2d 365, 366 (6th Cir. 1965).

The question thus becomes whether the Police Officers' lie that Mrs. Ghaster would be allowed to use her cell phone from jail amounts to implied or express duress or coercion, such that Mr. Ghaster did not freely and intelligently hand over the cell phone. The Court finds that it does not.  By way of analogy, police are allowed to lie to suspects during an interrogation in order to extract a confession or other evidence.  *Frazier v. Cupp*, 394 U.S. 731, 739 (1969) ("The fact that the police misrepresented the statements that Rawls had made is, while relevant, insufficient in our view to make this otherwise voluntary confession inadmissible.").  "The exception occurs when courts find that the deception, by making the situation appear hopeless, combined with other circumstances, constitutes coercion."  *In re D.A.S.*, 391 A.2d 255, 259, (D.C. 1978).  Thus, deception itself does not rise to the level of a constitutional violation; and this case is merely one of deception.

Mr. Ghaster, an attorney, is presumed to be an intelligent adult capable of making voluntary decisions.  Although the Police Officers may have lied to him about his wife

9

being allowed to use her cell phone in jail, such deception did not make the situation so hopeless that Mr. Ghaster had no choice but to hand over the cell phone. Rather, he voluntarily decided to hand it over, just as interrogated suspects are found to voluntarily confess even after being lied to. Mr. Ghaster's affidavit confirms this analysis: "Believing this story, I handed over the phone and a phone charger. I later discovered that I had been duped . . . ." ECF DKT #28-1, at 1, ¶¶ 7-8. Absent evidence of any coercion, the Court finds that the seizure of the cell phone was proper and did not rise to the level of a constitutional violation.

3. Mr. Ghaster's Claim to the Cell Phone

Insofar as Mr. Ghaster is a Plaintiff in the present case, and there is a dispute as to whether Mr. Ghaster or Mr. Davis gave the phone to the police, these facts are immaterial. In his own affidavit, Mr. Ghaster refers to the cell phone as "my wife's phone" thereby admitting he has no expectation of privacy in the phone. ECF DKT #28-1, at ¶ 9. As such, Mr. Ghaster and Mr. Davis are treated the same for purposes of the above constitutional analysis.

4. Conclusion

In light of the above, and taking the facts most favorable to Plaintiffs, there is no genuine issue of any material fact and Plaintiffs failed to establish a constitutional violation of their Fourth Amendment right to be free from unreasonable search and seizure. Therefore, Plaintiffs fail to meet each of the elements required for a § 1983 claim. Furthermore, because the Court finds that the search warrant and search were proper, assuming *arguendo* that the seizure was invalid, it would not rise to the level of a

constitutional violation because Police Officers would have been able to lawfully obtain the cell phone at that point.  Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Claim I.

**B. Claim IV: *Monell* Claim**

A government entity may be held liable under § 1983 if a plaintiff can show that the government entity itself is the wrongdoer.  *Collins v. City of Harker Heighers*, 503 U.S. 115, 122 (1992).  Liability attaches "when execution of a government's *policy or custom*, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent *official policy*, inflicts the injury that the government as an entity is responsible under § 1983."  *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978) (emphasis added).  For the reasons stated above, the Court finds no constitutional violation; and, without a constitutional violation, the *Monell* claim must also fall.

The *Monell* claim further fails because Plaintiffs failed to provide any evidence of a policy to violate Fourth Amendment rights.  Plaintiffs only rely on the mere allegation that "decision-makers within the City of Rocky River made a conscious decision to obtain the phone via false pretenses, rather than attempt to get another warrant."  ECF DKT #33, at 5. Plaintiffs base this allegation on the "fact that [John Doe Officer's supervisors] did not [intercede to return the phone] indicates that a decision-maker actually made a conscious decision to obtain the phone by any means, and at the very least, those decision-makers ratified decision by refusing to return the phone when it was requested."  *Id.*  Plaintiffs cite to *Pembaur v. City of Cincinnati*, *City of St. Louis v. Praprotnik* and *Meyers v. City of*

11

*Cincinnati* to support their logic, however, these cases are easily distinguishable.[3]

In *Pembaur*, the Court held that a single decision by a *policy maker,* with authority to make a final decision (e.g., a legislative body), satisfies the requirements of *Monell*. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-84 (1986) (emphasis added). Here, however, absent any evidence to the contrary, and by Plaintiffs' own admission, the individuals who allegedly ratified the conduct were mere "supervisors" or unnamed "decision makers," not "policy makers" capable of rising to the level of a legislative body. The *Praprotnik* and *Meyers* Courts similarly rely on actions by policy makers, of whom there is no evidence of in the present case. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1118 (6th Cir. 1999). Without even naming the alleged policy makers, pointing to similar actions by Rocky River Police in other cases, or describing actions that would amount to policy (other than not returning the cell phone upon request), there is no evidence to reach a conclusion that any policy existed that would violate Fourth Amendment rights.

In light of the above, the Court grants Defendants' Motion for Summary Judgment as to the *Monell* claim.

**C. John Doe Defendants**

The Court grants John Doe Defendants' Motion for Summary Judgment for lack of a constitutional violation. Furthermore, the claims against the John Doe Defendants must

---

[3] Plaintiffs cite to a quotation in *Praprotnik (see* ECF DKT #33, at 4), however, the quote does not exist at that citation, or elsewhere in the cited case. The quotation could not be located in any other cases. This is not to say, however, that the quote is misleading or stands for a proposition contrary to the holding in *Praprotnik*.

be dismissed because identifying them would be futile in light of the Court's decision and analysis of the underlying claims.

## V. CONCLUSION

In light of the above analysis, the Court GRANTS remaining Defendants' Motion for Summary Judgment and DENIES Plaintiffs' Motion for Summary Judgment on all of Plaintiffs' surviving claims.

IT IS SO ORDERED.

<u>s/ Christopher A. Boyko</u>
CHRISTOPHER A. BOYKO
United States District Judge

Dated:  May 22, 2013